Please proceed counsel. Good morning and may it please the court. My name is David Katz and I represent Mr. Adwan on appeal. What happened to Mr. Adwan was unfair. He helped the government greatly in his case with his cooperation and by the time he appeared at sentencing the government had made a request for a downward departure and the district judge had granted it. And ironically he couldn't be sentenced that day because there was a discussion then about whether he should get two points for the safety valve. The judge asked please come back the next day. Everyone came back the next day including Mr. Adwan who was on bail and an Anaheim police detective showed up and said that he had gotten information from an informant that Mr. Adwan had done something that was suspect, that was criminal in the detective's view. Mr. Adwan had sold the names of his contacts for methamphetamine distribution to another supplier for the cancellation of $150,000 debt. Is that correct? Well that was the allegation. That was admitted at sentencing by Mr. Adwan. He said yes yes your honor I knew that that would happen. At the time he came back for the sentencing he was first of all his ineffective attorney had made a sort of a I guess you could call it a government might call it an adoptive admission but that was not by Mr. Adwan himself. Then Mr. Adwan agreed with a sort of a lecturing statement from the district judge and then when he finally got a chance to speak he said two very significant things to the judge in his allocution. Number one he didn't know what Deary was up to or what his intent was. He didn't know what another drug distributor's intent would be with the names of contacts for sale of drugs? What did he think they were doing? Mr. Deary had been an informant for the government for two years. As I understand it he'd been allowed to leave the NBC prison because he was an informant. He worked for the government for two years and he said the second thing not only did he not know what Mr. Deary's intent was or that he had bad intent but that he told the district court judge in the allocution that Mr. Deary was working for the government and it's right there in the transcript. But counsel why would giving names be sufficient to satisfy a debt, a substantial debt otherwise? Well first of all if the government wants to proceed against him on something that's actually a statement by the agent that's an actual accusation they can charge him. The government doesn't have to charge him though in consideration of sentencing information can be brought forward. It's true that of course information can be brought forward but there has to be indicia of the liability. It has to be more probably than not true information under the sentencing guidelines. But not under 5K1.1. That's what we're talking about. We're talking about whether or not the government had the obligation to maintain its adherence to the motion in view of this information. So that's what we're looking at. We're not looking at whether or not it's adequate to support a conviction or probable cause. We're looking at whether or not the government was compelled in view of this evidence to retain its adherence to the motion. So what case authority are you relying upon to support your argument that this information was not sufficient to allow the government to withdraw its motion? We're relying on the Padilla case from the Second Circuit which is remarkably on point with this case. In fact in that case the person had even been arrested. There actually had been formal charges which have never been made against Mr. Oddwan in any way, shape or form to this day. We're also relying on a case called Dixon from the Fourth Circuit which holds to the same effect. The Nixon case cited in your brief? Yes. Dixon. Dixon, I'm sorry. Okay. And in both of those cases it was held that it was not an option by the government to pull back a fully executed, entered 5K1. They had made the motion for 5K1 which is what distinguishes it from a lot of cases and the district judge had granted it. And the other thing that's so crucial here, they didn't reserve the right to withdraw the 5K1 and yet they withdrew it anyway. But Counsel, would you agree that in determining whether or not the government has the right to withdraw, the language of the plea agreement is controlling? The language is critical. We would be past this issue and the government would, there's other problems with what the government did, but we'd be past this issue if the government redrafted its plea agreement. And all that would happen from U.S. v. Odd One being decided the same way that Padilla and Dixon was, was that the U.S. Attorney's Office in Los Angeles would put a clause in there, if they thought it was important, that said, among the rights that we have, in the event that we believe there's a breach, we have the right to withdraw a previously made 5K1 and a previously granted one by the district judge. They didn't say that. Isn't that just basic contract law that a party does not have to continue performance of a contract if the other party has breached a material condition thereof? That's our second argument. Thank you very much, Your Honor. The first one is that simply under the terms of this contract, the government could not do that and they have to turn square corners. They have the superior bargaining position. We're just like Padilla and Dixon, that they cannot withdraw this because it never says anything about withdrawing it. There's a case, Your Honor, where they imposed restitution and everyone said, wait a second, there was a financial loss. You should be able to impose restitution. And this court said, you know, if you don't even mention restitution in the plea agreement, whether it's common sense or not, the defendant cannot be forced to pay restitution under an agreement that the government's drawn up and the government never mentioned restitution. But here they mention specifically that he not commit a crime before sentencing and he had. But they didn't say that they had this remedy, either expressly or impliedly, and that's just like Padilla. Those are both cases, Padilla and Dixon. But, Your Honor, turning to your point, there wasn't a material breach here. Yes, everyone should obey the law. In fact, a defendant has a preexisting duty. That's why I make the point that where a defendant violates the preexisting duty that he has to not violate the law after the government's made a 5K1, after he's performed, after the district judge recognizes he's performed, gives him the credit for it, yes, he has to obey the law. And if he doesn't, they should prosecute him. We believe that these charges are totally bogus. We believe it's in the record. But you know what? If we're wrong, the government can charge him. Mr. Oddwine can have all the due process rights. But if we're wrong, the government can charge him in order to make the point of the to withdraw the 5K1 motion. I mean, your argument is once the 5K motion is made, it cannot be withdrawn absent express language authorizing the withdrawal, even in the face of egregious criminal activity by the defendant. Is that your argument? That's not our argument. Our first argument was the fact they don't have the express thing. In terms of turning to the material breach and so forth, this is an unusual case, even once you get into the second area, the material breach, which is also a problem for the government. If Mr. Oddwine was a continuing witness, which is often the situation, you could say the commission of this crime in our belief, proven or not, in the government's belief, undercuts his value as a witness. That's not the only thing that makes it material, though. Well, it certainly would be a critical thing in this case, which is lacking. Everything is lacking in this case because Mr. Oddwine has already given incredibly valuable information to the government. That doesn't immunize him, though, in terms of being able to commit crimes with impunity after he's given that information. So you want a free pass. Once you give the information, then the defendant can go out and do whatever he wants with impunity. That can't be right. We're not saying that it's with impunity. We're saying in this particular case there was not a material breach because Mr. Oddwine had performed. He'd given them the heads of drug dealing organizations. He'd given them information about money laundering back to the Middle East. He'd risked his life. He'd risked his family's life. They came in and said it. He'd done all of those things. Now, if they believe, and this is not, we believe in this case, based on everything, a proper showing, especially with Mr. Oddwine's statement and intent and denying or stating that he believed Deary was working for the government, and Deary was working for the government. In fact, even at that time, he continued to help the government. He made phone calls even after that occurred because the government didn't want him remanded at that point. They wanted him at that point, having gotten that information, to be out and to keep working. But if an erstwhile criminal knows that someone is working for the government, why would that person give a list of drug dealers to a That information is contested. That has never been firmly established. Our final argument, Your Honor, is that this sentence was still unreasonable for all the reasons in point three of our brief. And it was still an unreasonable sentence because, again, we make the same point that these were unsubstantiated allegations, no declaration, no testimony, no nothing, no due process. And the judge failed to give appropriate weight to Mr. Oddwine's extraordinary cooperation. The government came in and asked that it be 37 months. Then there was this whole brouhaha the next day. Even after that, the government asked that it be a 70-month sentence. And then the district court judge went above that. That's one of the reasons that we argue that there has to be a remand to a different judge. Number one, there was a breach of the plea agreement. There's a bright-line rule. It has to be a remand to a different judge. And number two, there was this sort of personal, this appearance of a sort of personal involvement where the judge remanded someone that the government didn't want to have remanded, sentenced somebody to much more than even the government asked for. But judges do that all the time. I mean, that's not unusual for a judge to give a stiffer sentence than the government bargained for. That's not necessarily an indication that the judge is acting inappropriately. It's a series of things that happened in this case that we believe under the court's authority and its decisions, I've named a few of them, Arnett and a few others, that it would be better for the appearance of justice. We're not making any disparaging comments about anyone. But under the appearance of justice, that it be remanded for resentencing to a different district court judge. And that's also required, as I say, under the bright-line rule. If there's a breach. If we find a breach, right? Well, yes. And we strongly believe on the record there was a breach. I have just one question on the other issue. You cite to the Padilla case. And as I read the Padilla case, the agreement in that case was silent regarding the withdrawal of the motion once filed. So how does that case govern here? Because this agreement is silent about whether there can be withdrawal of the motion by the government. But it's not silent as to the condition precedent to the agreement being put in effect, which is if defendant at any time between the execution of the agreement and the completion of or defendant sentencing commits a crime. Right. Then the deal's off. It's a condition prior to the performance of the government recommendation being effective. Two things. We don't believe that it was ever shown by competent evidence of the level it should be that there was the commission of a crime. There was an unsworn allegation from somebody. That was hearsay from an informant. And number two. But he admitted to the sentencing. He said, yes, yes, Your Honor, I know. Isn't that what he said? During that he's being lectured and he answers just those one words, yes, I know, or yes, Your Honor, or something. Then. Yes, I knew. In the same line of it, as soon as the judge stops lecturing him and he has a chance to talk, he says, I did not know what Mr. Deary's intent was at the time. And number two, I knew that Deary was working for the government. And I believe that this had something to do with him working for the government. That's in the record. Do you think the judge as a trier of fact can make a judgment as to believe your client or not when he's seeing him right there in the courtroom? I believe that generally that can be done. But I come back to the same thing. There was not a material breach in this case because Mr. Oddman had already performed all the important things and the government got a huge value for the cooperation in this case where everyone had pleaded guilty that he cooperated against. He was never contemplated to be a witness. He performed. The government had gotten a great deal of value. All right, counsel, you've exceeded your time. We'll give you one minute for rebuttal. Thank you very much. Good morning. May it please the Court, I'm Christopher Brunwyn. I represent the United States of America. Mr. Brunwyn, since time is short, opposing counsel's main argument seems to be that when he said, yes, yes, Your Honor, that was taken out of context and that he later said, explained that he didn't know what Deary was going to do, I got nothing to do with this, and other similar statements. How can that be said that he is committing, I mean, that he is admitting that he committed a crime? Your Honor, I believe that that is one admission, but the record, and I can point to references and the government has cited in the record numerous citations where the defendant and his counsel acknowledged that he did, in fact, do what the government believed he had done, what the officer offered his testimony about what he believed, what agents had learned the defendant had done. Counsel, were you the attorney assigned to this case in the district court? Yes, Your Honor. In the transcript of the sentencing hearing on June 6th, in addition to the statement that the court just referenced, the defendant himself discussing the transaction, discussing the fact that he had effectively received $150,000 of a $900,000 deal, his words were, there was pressure to need some money, and that's why I did that. And that's at the transcript of June 6th, 2005, at pages 25 to 26. It's the excerpts of record, pages 31 to 32. In addition to that, in the defendant's sentencing position paper submitted prior to that sentencing hearing, which is the government's supplemental excerpts of record, it was not included in the defendant's excerpts of record, the defendant acknowledged that he undertook these acts, that he committed this offense, that the court noted was the exact same offense, the same type of conduct, the same type of bulk pseudoephedrine transaction that was the subject of the indictment. This defendant essentially was, had returned to the same conduct which resulted in his conviction. Counsel, what is your response to opposing counsel's argument that absent an express provision allowing withdrawal of the 5K motion, that the government is a stop from withdrawing the motion once it's been presented to the court and the court has approved it? What's your response? I think there are several, and with regard to his citation of the Padilla case, I'll discuss that with regard to the understanding of it. I think the Padilla case is different from this case in a couple of respects. And frankly, I don't want to say that I think Padilla is correct, because I think it leads to an unreasonable and untenable result. But Padilla is nonetheless different. Padilla is a case where they were talking about the remedy for a breach of the agreement. In this case, the government was at every turn looking to its obligations under the agreement. And as the court points out, those obligations are triggered by the defendant's compliance with his obligations not to commit other crimes, to be candid with the government. And again, different from Padilla, as the court has also pointed out, the language, the temporal discussion in the plea agreement in this case, that the government's obligations, the government's obligation to recommend a departure under 5K or not is extended up to the time of sentencing. And in this case, that became particularly important because the government filed a 5K motion, and in the two weeks, the intervening two weeks from the filing of the motion, the defendant committed another crime. The government, and for that reason, that's why the provision in the agreement, in the plea agreement, says that the government's obligations will be triggered to make a recommendation or not at the time of sentencing. Counsel, what about opposing counsel's argument that if the government believed that Mr. Adewine had committed an offense, it should have charged him and prosecuted him for that? Well, that is not an obligation under the agreement. It's not an obligation at sentencing. I can't speak to the state of an investigation regarding the local law enforcement agency. My response is simply that it is not an obligation under the agreement. However, what the record strongly reflects in this case is that the defendant did commit that offense, did connect a large-scale supplier of pseudoephedrine overseas with customers in the United States, and intended to make $150,000 as his portion of the deal, and had no intention of disclosing that to agents at any time prior to having been caught and confronted with the issue at his sentencing hearing. And those are facts that were never contested at the sentencing. His defense counsel and the defendant himself acknowledged those facts as being true. They were not contested, nor was the performance of the government's obligations under the plea agreement contested in the district court. And yet the government recommended a far less sentence than the judge gave him. Do you have any comment on that? Well, Your Honor, and at the sentencing, and I think the record also reflects that the position the government took, the position I took at sentencing was that under the plea agreement, based upon this defendant's conduct, he was not entitled to a departure under Section 5K1.1. He was not entitled to that. So the position I took was the position that I would have been obligated under the plea agreement to take without a 5K recommendation. And that is why my recommendation or the government's recommendation, the recommendation I took, put him in the position where he was under the plea agreement under the sentencing factors and the considerations of the guidelines without the 5K recommendation, including the fact that recommending low end of the applicable guideline range. And I think the record also reflects my statement in explaining that to the court, that I took the view that the government was complying with its obligations under the agreement, even though the defendant had not. Thank you. All right. Thank you, counsel. Thank you. We'll give you one minute for rebuttal, counsel. Thank you very much. I wanted to refer to Your Honor's question about the condition of precedent. There was the condition precedent that he not or there was the condition that he not commit a crime. If he had committed a crime, as we said before, the government had the option to prosecute him. Under the plea agreement, the government had the express option to use his statements from the time that he was cooperating against him, whereas they couldn't have otherwise. But they couldn't use this remedy. The remedy was not set forth in the plea agreement. Why do you say that? Well, it reads very clearly. If he doesn't, if he commits a crime before sentencing, the government can declare the agreement in breach. If the government declares the agreement in breach, which it may do in its exclusive discretion, defendant will not be able to withdraw defendant's guilty plea, and the government will be relieved of all its obligations under this agreement. In particular, the government will no longer be bound by any agreement concerning sentencing, and it will be free to seek any sentence up to the statutory maximum for the crimes for which defendant had pleaded guilty. That's pretty good language, isn't it? We read that agreement in its entirety under the case law quite differently, that they did not have the remedy to take back an already made, already accepted plea, a 5K1. Because they didn't use the word, we can take back a 5K1. And look how long the agreement is, and look at all of the different remedies it does call out, and it doesn't call out that remedy. If Your Honors would look at page 32 of the excerpts of record, that really has the discussion where Mr. Oddwan says, this is all my job, and I wasn't knowing what he was doing, what his intent to do. This is all what happened, and it was a stupid thing for me. And he talks about his kids. And the judge says, well, you knew exactly what he was going to do. That's when the defendant says, yes, yes, Your Honor. The court then lectures him some more. He says, Your Honor. He tries to interrupt. The court lectures him some more. And then he gets a chance to speak, and he says, I know this guy. He's cooperating with the government, and I know he was working with the agent. I thought he was just going to do something to, he should have said, for the government. He never explained to me what he going to do. That's what I have in my mind, because when he's cooperate, he was out in the country for a few years. He was working with agents for the government. And that is all that's coming in my mind. And I prove it to the government. I got nothing to do. I make a phone call in front of them. I have no connection with these people. I did make a phone call from the office of the U.S. Attorney, Mr. Brunman. I got nothing to do with him. All right, counsel. We understand your argument. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar, United States v. Switzer has been submitted on the briefs.
judges: D.W. Nelson, Rawlinson, Bea